## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DORIS ANN FOSTER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 19-1623 |
| MARGARET M. CHIPPENDALE, *Warden,* [1] | * | |
| LAKISHA PARKER, *Lieutenant,* | | |
| COMMISSIONER OF CORRECTIONS, | * | |
| Defendants. | | |

\*\*\*

### MEMORANDUM OPINION

Plaintiff Doris Foster, a state inmate, brings this civil action pursuant to 42 U.S.C. § 1983 against Defendants Warden Margaret M. Chippendale, Lieutenant Lakisha Parker, and the Commissioner of Corrections. ECF No. 1. Foster claims that Defendants subjected her to cruel and unusual punishment by forcing her to remain in a cell with an inmate who presented a threat to her health and safety. Foster also avers that Defendants retaliated against her for complaining by moving her to another building. *Id.* Additionally, Foster claims that Defendants tampered with her mail. ECF No. 15. As injunctive relief, she seeks an order compelling the Defendants to reassign her housing unit. Foster also requests money damages. ECF No. 1.

Pending before the Court is Defendants' motion to dismiss the Complaint, or alternatively, for summary judgment to be granted in their favor. ECF No. 20. The Court advised Foster of the motion and her right to respond. ECF No. 21. Foster filed an opposition. ECF No. 24. The Court concludes a hearing is not necessary. *See* L. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Motion is granted.

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Defendants' names.

## I.       Background

Foster is 74 years old and is serving her prison sentence at Maryland Correctional Institution for Women (MCI-W).  Several years ago, Foster suffered from a stroke which left her blind in her right eye, and sensitive to cold air.  ECF No. 1, pp, 3-4; ECF No. 1-3, pp. 9-29, 31-34.

On an unspecified date, Parker moved inmate Robin Thompson into a cell with Foster. Thompson attached a fan to a window screen and also placed her television on top of her locker in a precarious manner.  Foster was afraid that either item would fall and injure her.  ECF No. 1, pp. 3-4.  Additionally, Thompson's using the fans made Foster cold, which caused Foster to be in pain. *Id*., p. 4.

On November 13, 2017, Foster advised Warden Chippendale in writing, and copied Parker, that Thompson was abusing and bullying her.  ECF No. 20-3, p 1, ¶ 3; ECF No. 20-4, p. 1, ¶ 3. Foster also accused Parker of discriminating against her on account of her race and age.  ECF No. 20-3, p. 2, ¶ 5.

Parker was responsible for investigating Foster's complaint.  ECF No. 20-3, pp. 1-2. ¶¶ 3-4; ECF No. 20-4, p. 1, ¶ 3.  Parker first interviewed Thompson who reported no issues with Foster and that she (Thompson) had refrained from using her fan as an accommodation to Foster.  ECF No. 20-3, p. 1, ¶ 3, p. 2, ¶ 6.  According to Thompson, Foster had not had a cellmate for quite some time and did not want one now.  *Id*.

Parker next met with Thompson and Foster together.  ECF No. 20-3, p. 1, ¶ 4.  Foster stated that she got along fine with Thompson but that she (Foster) did not like the fan and wanted a cellmate who would not use the phone.  *Id*.  Foster acknowledged that she would have a cellmate but reported that because of her health, she could not be housed with someone who used a fan.  *Id*.,

p. 2, ¶ 4. Foster also told Parker that when she complained of Thompson's "bullying," Foster did not mean to suggest that Thompson had been physical or violent. Rather, Foster meant to convey her fear that Thompson's fan or television could fall on her. ECF No. 24, pp. 2-3. Acknowledging Foster's fears, Parker offered to place Foster in protective custody. Foster refused and completed a protective custody waiver form. ECF No. 20-3, p. 2, ¶ 6.

During the interview, Foster also told Parker that there was no heat in her cell. ECF No. 20-3, p. 2, ¶ 7. Foster requested to be moved into another cell, but that cell also did not have heat. *Id*. To avoid future issues with Foster's sensitivity to cold, Parker declined to move Foster to her requested cell. *Id*.

Parker also tried to talk to Foster about her claim that Parker had discriminated against her because of her age and race. Parker asked Foster what she meant by the accusation. Foster responded that she was referring to the issue regarding the fan in the cell and then stood up and said, "Since you won't do anything, I will go to the Major." *Id*.

Foster next was moved from her cell with Thompson to Building #192. Building #192 is a housing unit for 96 inmates housed two to a cell. ECF No. 20-3, p. 2, ¶ 9; ECF No. 20-4, p. 2, ¶ 6. A, B and D wings house general population inmates while segregation inmates are housed in wing C. *Id*. Foster was assigned to the wing B. *Id*.

Foster believes Defendants moved her to Building #192 in retaliation for having complained about Thompson and Parker. ECF No. 1, p. 5. Foster asserts that Building #192 is "full of drug addicts, violent inmates." ECF No. 1, p. 5. She broadly contends that no senior citizen should be housed in Building #192 because it is condemned and rodent infested. *Id*. Additionally, Foster states that she spent months in her cell in Building #192 because she was

afraid to come out.  ECF No. 24, p. 4.[4]

Foster has also alerted the Court, by separate correspondence filed in October 2019, that she has not received incoming mail from her brother and a friend.  ECF No. 15.  She argues that she has not received the mail because she is known by a different name at the Division of Correction ("DOC") commitment than is her "tribal name."  *Id.*  Foster avers that she is member of the Native American "Wiacomah" Tribe, and Defendants' failure to notify her that her mail addressed to her tribal name had been returned violates her right to due process and amounts to censorship.  *Id.*  However, Foster also admits that she had been informed she could have her tribal name on incoming mail so long as the mail also included her DOC commitment name and number. However, problems with the mail arose after she filed this suit. *See also* ECF No. 20-6 (Incoming and Outgoing Mail Direction MCIW ID 250.0001-1). *Id.*, p. 3.  Foster's base file reflects that she had identified as "Native American" and handwrote "pagan spiritualist," but then changed her affiliation to Protestant/Lutheran.  ECF No. 20-7, p. 1, ¶ 3, p. 3-4. MCI-W currently lists Foster's preference as Lutheran.  *Id.*, p. 1, ¶ 4.

### B.     Pertinent ARPS

In December of 2017, Foster filed an administrative remedy procedure (ARP) regarding he claims of abuse centered on elderly inmates.  ECF No. 20-10, p. 3.  The ARP references Foster's dispute with Thompson and Foster's contention that Parker refused to help her.  *Id.*, p. 6.  She alleged that Parker "discriminates against certain inmates" and shows favoritism.  *Id.*, p. 8.

After investigation, the ARP was dismissed.  ECF No. 20-9, p.1, ¶ 3; ECF No. 20-10 (ARP MCI-W-#0685-17); ECF No. 1-3, pp. 35-34.  Foster appealed the dismissal to Warden Chippendale who concluded that no evidence supported Foster's allegations that elderly inmates

---

[4] Foster's response is replete with new allegations not included in the Complaint and so will not be considered here.  *See Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-3193, 2015 WL 2227928, at *7 (D. Md. May 11, 2015) (response to dispositive motion cannot amend a complaint).

are bullied or mistreated or that Parker discriminated against her.  ECF No. 1-3, p. 35; ECF No. 20-10, p. 4.  Foster appealed the Warden's decision, adding that her housing assignment was changed as retaliation for her complaining about such mistreatment.  ECF No. 1-3 p. 37. Foster then appealed the decision to the Inmate Grievance Office ("IGO").  ECF No. 20-11, p. 1, ¶¶ 3-4; pp. 2-36.  The grievance was dismissed on May 23, 2018 for failure to state a claim.  *Id.*, p. 1 ¶ 4; p. 37.

Foster also filed two ARPs in 2017 regarding medical issues which were dismissed or withdrawn.  ECF No. 20-9, p. 1, ¶ 3 (ARPs MCI-W-#0144-17 and MCI-W-#0430-17).  In 2018, Foster filed three ARPs related to medical complaints and then withdrew all of them.  ECF No. 20-9, ¶ 4 (ARPs MCI-W-#0034-19, MCI-W-#0035-18, and MCI-W-#0143-18).  In 2019, Foster four ARPs related to broken showers, subpar laundry facilities, and medical issues.  ECF No. 20-9, p. 1, ¶ 4.  One was sustained and the rest were dismissed.   Foster took no further action on any of the ARPS save for the 2017 alleging discrimination and retaliation arising from her housing complaint.

## II.    Standard of Review

Defendants have moved to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor.  Such motions implicate the Court's discretion under Rule 12(d).  *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction

with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Foster was placed on notice that Defendants sought summary judgment. ECF No. 20. *See Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Foster has also submitted record evidence outside the four corners of the Complaint. ECF No. 24. Accordingly, the Court will treat this motion as one for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

### III.    Analysis

Defendants argue that summary judgment is warranted because Foster failed to exhaust her administrative remedies. ECF No. 20. Alternatively, Defendants argue that Foster has not generated sufficient evidence to sustain her claims and even if she had, the Defendants are immune from suit. *Id.* The Court addresses each argument in turn.

### A.    Failure to Exhaust Administrative Remedies

Pertinent here, the Prisoner Litigation Reform Act states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this Court will near the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005). Because the Court may not consider an unexhausted claim, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. ____, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S. Ct. at 1856 (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion

were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a)*; see Ross*, 136 S. Ct. at 1855. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725 (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

Inmates housed at an institution operated by the Maryland Department of Public Safety and Correctional Services ("DPSCS") may avail themselves of the administrative grievance process which is designed for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 et seq.; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). If an ARP is filed and denied, the prisoner may appeal the denial with 30 days to the Commissioner of Correction.

If the Commissioner of Correction denies the appeal, the prisoner may file a grievance with the Inmate Grievance Office ("IGO"), also within 30 days. C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); see COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).

If a prisoner's failure to exhaust is "apparent from the facts alleged," then dismissal is warranted. *Anderson*, 407 F. 3d at 682. Alternatively, where the Complaint does not clearly

determine the issue, the court must examine material outside the pleadings and treat the motion as one for summary judgment. See Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F. 3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003).

It is undisputed that Foster has not pursued her administrative remedies for the lion's share of her ARPs. Nor does Foster offer any rationale for failing to pursue administrative relief. Any claims challenging her treatment at WCE for which she did not exhaust her appellate rights or withdrew the claims cannot be considered here. Summary judgment is, therefore, granted in favor of Defendants for failure to exhaust administrative remedies on all claims save for the 2017 ARP challenging her housing placements.

## B.    Eighth Amendment Claim

Foster maintains that Defendants' decision to house her with Thompson and subsequent assignment to Building #192 constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Whether complained-of living conditions rise to the level of an Eighth Amendment violation requires assessing "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). To succeed in an Eighth Amendment conditions-of-confinement claim, a prisoner must show that "the deprivation of [a] basic human need was objectively sufficiently serious," and that "subjectively the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original) (citation omitted). Where an inmate suffers an objectively serious deprivation of rights and the official allegedly responsible for the deprivation has acted

with "deliberate indifference" to inmate health or safety, an Eighth Amendment claim lies. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Viewing the evidence most favorably to Foster, her housing assignment with Thompson or to Building #192 did not violate contemporary standards of decency sufficient to constitute cruel and unusual punishment. The evidence, at best, reflects Foster and Thompson's inability to agree on how to coexist. And when Foster complained about the temperature in her cell, she was transferred within in a few weeks. Finally, as for Foster's bald allegation that Building #192 was "condemned," no record evidence supports this characterization. Summary judgment on the Eighth Amendment claim must be granted.

### C.      Retaliation Claim

Foster also avers that she was transferred to Building #192, a less desirable placement in her view, because she had complained about Thompson. To be sure, inmates retain a First Amendment privilege to petition for redress of grievances; thus "prison officials may not retaliate against prisoners for exercising their right to access the courts." *Booker v. S.C. Dep't of Corr.,* 855 F.3d 533, 544 (4th Cir. 2017); *see also Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). However, no evidence supports that the placement was so motivated. Rather, the record supports that the sole impetus for the transfer was to address Foster's complaints about living with Thompson. Nor is there any evidence that the conditions in Building #192 were objectively more onerous other housing units in MCI-W, giving rise to any inference that the move would be "retaliatory." On this record, no reasonable juror could conclude that Defendants retaliated against Foster. Defendants' summary judgment motion must be granted.[5]

---

[5] Foster separately names the "Commissioner of Corrections" as a Defendant but alleges no acts which would render the Commissioner individually liable for any of the claimed violations. *See Love-Lane v. Martin*, 355 F.3d 766, 782

### D.      Injunctive Relief

Finally, as to Foster's requested injunctive relief, the Court has learned that Defendants have granted Foster the very relief she had sought – to be moved from Building #192.  ECF No. 20-1.  Where, as here, subsequent events render the requested injunctive relief moot, the Court shall not grant it.  *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief).  Accordingly, Foster's requested relief must be denied as moot.

## IV.      Conclusion

Defendants' Motion for Summary Judgment is granted as to all claims.  A separate Order follows.


August 21, 2020                                            /S/
Date                                            Paula Xinis
                                            United States District Judge

---

(4th Cir. 2004) (holding respondeat superior liability not available under § 1983). Liability for constitutional deprivations brought pursuant to 42 U.S.C. § 1983 attaches only where the individual defendant participated personally in the alleged deprivation. *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir. 2001).  To the extent the Commissioner played any role in the denial of Foster's ARPs regarding her conditions of confinement, such involvement is not sufficient to confer liability.  *See, e.g., Whitington v. Ortiz,* 307 Fed. Appx. 179, 193 (10th Cir. 2009) (unpublished); *Larson v. Meek,* 240 Fed. Appx. 777, 780 (10th Cir. 2007) (unpublished). Summary judgment is granted in the Commissioner of Corrections' favor.